# Sarah Carmichael *et al.*

## *v.*

# Sarah Reed *et al.*

Chancery—*proof must conform to the allegations in the bill.* A complainant cannot be permitted to state a case one way in his bill, and make another and a different case by the testimony.

Appeal from the Circuit Court of McHenry county; the Hon. Theodore D. Murphy, Judge, presiding.

This was a bill in chancery, filed by the appellees against the appellants, in the Circuit Court of McHenry county, to set aside a will, on the ground that the testator had lost his reason and was incapable of making a will, and that his wife, having him entirely under her control and influence, fraudulently and by undue means caused him to make the will.

The defendants filed their answer denying the material allegation of the bill.

The complainants filed a replication, and an issue was made up " whether the writing produced be the will or not of Hezekiah Carmichael, deceased." At the March Term, A. D. 1867, there was a trial by jury, and a verdict " that the writing produced is not the will of Hezekiah Carmichael, deceased." Motion for new trial was overruled by the court, and a decree rendered annulling the will.

The case is brought to this court by appeal.

The facts sufficiently appear in the opinion of the court.

Mr. Silvanus Wilcox, for the appellants.

Messrs. Church & Coon, for the appellees.

Mr. Chief Justice Breese delivered the opinion of the Court:

This was a bill in chancery exhibited in the Circuit Court of McHenry county, by Sarah Reed and Melissa Shafley, claiming to be heirs at law of Hezekiah Carmichael, deceased, against

Sarah Carmichael, his widow, and Mary E. Carmichael and others, claiming to be the devisees of Carmichael under his last will and testament.

The object of the bill was to set aside the will under which defendants claimed, on the allegation, that, for more than ten years before the death of the testator, he was completely under the management and government of his wife, Sarah, and controllable at her will, and it is alleged, that so effectually and of purpose did she exert her influence over him, that before he lost his reason he became estranged from the complainants, and her influence over him became increased until "he was entirely moldable at her will like clay in the hands of the potter." And it is also alleged, that, in 1860, the testator "was very sick, and for so long a time that his mental and physical being became wrecked and disorganized and his mind deranged, from which he never recovered, and that his derangement was to such extent that he was not fit to, and was unable to, transact, properly, his ordinary business, and so continued until his death."

It is further alleged, that after a partial recovery from this illness, the testator was more under the control of his wife, and was the mere willing and passive instrument in her and her children's hands, who purposely exercised this influence over him greatly to the intended damage of the complainants; and that, while he was in this state of unsound mind and incapable of understanding or doing business, and controllable by his wife, about the 18th of February, 1865, she, or some one, caused and procured to be made up and drawn up, the will in question, and did, by such undue influence, before and at that time exercised over him, cause and procure him to attempt to go through the mere formal ceremony of attesting the paper so procured to be drawn up as and for his last will and testament.

The bill prays, that defendants be required to prove the writing to be the last will of Carmichael, and, in default thereof, his property shall be declared "intestate estate," and the will and all the proceedings in the County Court establishing the

will be set aside, and the letters testamentary granted to Sarah Carmichael be annulled.

Answers were duly filed denying all the material allegations of the bill as to undue influence, and the unsoundness of mind of the testator.

An issue was made up whether the writing produced was or not, the will of Hezekiah Carmichael deceased, and submitted to a jury, who on a second trial found that the writing produced was not the will of Carmichael.

A motion for a new trial was made by the defendants, and overruled, to which exception was taken, and thereupon the court decreed as prayed.

The record is brought here by appeal, and this decree alleged as error.

The principal point argued is, that the verdict of the jury is not sustained by the evidence.

It appears, from the evidence, the testator had been twice married, the complainants being the issue of the first marriage, and naturally jealous of any partiality manifested by their father for their sister of the half blood, and, as not unfrequently is the case, suspicious of the conduct of the step-mother, the instincts of nature teaching her to take care of herself and her own progeny, to the disinherison, if need be, of others equally entitled to the father's estate.

We have looked carefully into the testimony to sustain the allegations of the bill, and find, as it respects that of undue influence on the part of the wife and children, there is not one fact proved from which such an inference can be reasonably drawn. There is not the slightest evidence the wife made use of the natural and proper influence of her position to induce the testator to make a will, and the will itself shows no provision was made by it for his wife, giving her only what the law allowed her, and appointing her executrix. Her children, it is true, are preferred to the complainants, but there is not a particle of evidence the testator was induced to the preference by any thing they or either of them said, did, or contrived. The complainants were married and absent from the home circle, and

whose husbands had not his confidence and regard, as it plainly appears from the testimony, and who, the testator believed, would not make a good use of. a bequest to their wives. It is not uncommon, as all observation shows, that a father, in disposing of his property, is quite apt to lean in favor of those around him, and in hourly and daily communication with him. His right to be so influenced none can question, and his caprices, no matter how apparently unjust, if they do not amount to insane delusions, and are not traceable to undue influence exercised over him, courts cannot disturb.

. It would seem, from the evidence in the cause, that the testator was not a person who could be influenced against his own convictions of duty. He was a self-reliant, business man, of a capacity more than ordinary, obstinate and self-willed, always having his own way in every matter, and coming to conclusions by his own undivided judgment. As to alleged unsoundness of mind, there is not a scintilla of evidence going to establish it; but the contrary, that, to the last, though physically disabled by age, his mind was in full vigor beyond that of most men.

It appears, from the record, the testator made two wills, the one in question dated February 18, 1865, and one dated in August of the same year, both of which were before the jury, and both of which were attested by the same witness, Elisha Dayton. He alone signed his name as a witness to the August will, while that of February was attested by the requisite number of witnesses, of whom Elisha Dayton was one and his wife, Mary, the other.

It was insisted by the complainants, that the August will was the one which the testator wished to establish, and to which he desired the attestation of Mrs. Dayton with that of her husband, and that, for sinister purposes, the widow, when directed by the testator to produce the will for Mrs. Dayton's signature, fraudulently produced the will of February, and so that received the proper attestation, instead of the will of August, 1865. It is sufficient to say, in answer to this ground of claim, that it is nowhere alleged in the bill, there was such

a substitution of wills, nor any allusion to such a fact, nor is the bill, in any sense, predicated upon such a fact, but simply upon the grounds of undue influence, and incapacity to make a will.

On the long established doctrine of this court, as well as of other courts, the complainants could not prevail on the fact of substitution, if proved, as it is not alleged in the bill. They are not permitted to state a case one way in their bill, and make another and a different case by the testimony. *McKay* v. *Bissett*, 5 Gilm. 499; *White* v. *Morrison*, 11 Ill. 361; *Rowan* v. *Bowles*, 21 id. 17; *Chaffin* v. *Heirs of Kimball*, 23 id. 36, and many other cases at law as well as in chancery.

Some objection was made to the proof of the execution of the will, which is without force. The will in question was executed according to all the formalities of the statute. Scates' Comp. 1180.

The question on which the jury found their verdict, and on which instructions one and two for complainants were based, was not before the jury, and, consequently, they should not have been given.

We see no ground upon which the decree can be sustained. There is an entire absence of proof of any of the allegations of the bill.

The decree must be reversed and the cause remanded.

*Decree reversed.*