134 298
204 393
204 395

134 298
207 6197

134 298
211 8580

134 298
f114a7622

134 298
215 1545

# MINERVA HALL PURDY

## *v.*

# EDGAR A. HALL *et al.*

*Filed at Ottawa October 31, 1890.*

1. WILLS—*contest of will—testator's knowledge of contents—presumption—degree of evidence.* In the absence of evidence, it will be presumed that a person who executes a will or other instrument does so with a knowledge of its contents; but this is a presumption which will readily yield to evidence tending to show that such was not the fact.

2. Where a will has been written, or procured to be written, by a person largely benefited by it, that is a circumstance to excite stricter scrutiny, and require stricter proof of volition and capacity. In such case, the proof must satisfy the court or jury that the testator has not been imposed upon, but knew what he was doing, and the disposition he was making of his property, when he made the will.

3. SAME—*burden of proof—on contest of will.* On the contest of a will by bill in chancery, the trial is *de novo,* and the burden of proof is primarily upon the proponents of the will, and they are required to show that the will was in writing, and signed by the testator, or by some person in his presence and by his direction, and was attested in his presence by at least two witnesses, and that the testator was of sound mind and memory at the time of signing or acknowledging the same.

4. The statute makes the certificate of the oaths of the attesting witnesses at the probate, evidence on the hearing upon the bill; and when such evidence is admitted covering the points prescribed by section 2 of the Statute of Wills, it will *prima facie* establish the will, and the burden will then be shifted to the complainants contesting the same.

5. SAME—*evidence—copy of will.* On the trial of an issue whether an instrument of writing is the last will of a deceased person, it is error for the court to allow the defendants to introduce in evidence a certified copy of the will. The original should be produced, or its absence properly accounted for.

6. ALLEGATIONS AND PROOFS—*must correspond.* A complainant in chancery is not permitted to state his case one way in his bill and make another and different showing by the testimony. He must recover, if at all, on the grounds stated in his bill. The *allegata* and *probata* must correspond.

7. So where a bill in chancery is filed for the purpose of setting aside the probate of a will, the complainant will be allowed to impeach

the *prima facie* case made in favor of the validity of the will only upon the particular grounds that are alleged in his bill of complaint.

8. PRACTICE—*directing what the verdict shall be.* Where the evidence given at the trial of a cause, with all the inferences that can justifiably be drawn from it, is so insufficient to support a verdict for the plaintiff that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant. This rule applies on bill filed to contest a will.

9. Where the evidence on the part of the contestant of a will, in the absence of any rebutting testimony on the part of the proponents, is such as to justify a verdict setting aside the will, it will be error for the court to direct the jury to find a verdict in favor of the will.

10. In this case, on bill to set aside a will, it was alleged that the testator was induced to sign the same by undue influence, fraud and compulsion on the part of the principal devisees, and that they misrepresented to him the contents of the instrument which he signed. There was no proof that the will signed was ever read to the testator, and it appeared that the principal devisee, instead of procuring the person to write the will desired by the testator, brought another lawyer of his own selection, and the will was drawn by such lawyer in the presence of the testator and such devisee, and there was proof tending to show that an undue influence was exercised. The court below directed the jury to find for the proponents of the will: *Held*, that the court erred in so directing the verdict, and that the evidence should have been left to the jury.

APPEAL from the Superior Court of Cook county; the Hon. EGBERT JAMIESON, Judge, presiding.

Appellant filed her bill of complaint in the Superior Court of Cook county, in which she alleged, that on August 8, 1888, Loammi Hall, since deceased, executed an instrument in writing, which purported to be his last will and testament, and died on or about August 14, 1888, and that on August 18, 1888, said will was probated in the probate court of Cook county. The names of the heirs-at-law that the deceased left him surviving were given in the bill, and the will was set out therein verbatim. The object of the bill was to set aside the will as invalid, and the charging parts of it, with reference to such invalidity, were in substance as follows: That at the time of the execution of the instrument Loammi Hall was a

bachelor, sixty-nine years old, and, in his last sickness, feeble in body and mind, and was induced to execute it by and through the undue influence and compulsion and fraud of Edgar A. Hall, Zebulon M. Hall, and Catherine Hall, wife of Zebulon M. and mother of Edgar A. Hall, who conspired with her husband and son in the premises, and by the said persons misrepresenting to the deceased the contents of the said instrument; that after it was. executed it was taken away from the said deceased, and kept out of his power and control, by the said Edgar, or some one at his suggestion, and that the same persons, and especially said Catherine Hall, would not allow the neighbors, friends and relatives in whom the deceased had confidence, to approach him, although he desired to see and communicate with them, and although the deceased wished to get possession of the said will and to destroy it, he having become suspicious that it did not contain his true will, as in fact it did not, and he was prevented from obtaining possession of and destroying the same, through the fraud and compulsion of the same Edgar A., Catherine and Zebulon M. Hall and their confederates.

Answers were filed denying the allegations of the bill, and a jury was impaneled and sworn to try the issue formed.

Appellees gave in evidence certified copies of the will, and of the order of the probate court admitting the same to probate, and also the evidence of the attesting witnesses which was taken at the time said will was probated. Appellant then introduced her testimony, and when she rested her case, the court, over her objections and exceptions, directed the jury to return a verdict sustaining the will.

Mr. H. B. HURD, for the appellant:

The court erred in admitting in evidence a certified copy of the will, and proceedings in the county court. The issue made up is, whether the writing produced be the will. Section 18 of the Statute of Wills has no application.

Undue influence, compulsion and fraud may be proved by circumstantial evidence, and the jury are the judges of the weight of the evidence. 1 Jarman on Wills, 30; *Moyer* v. *Swygart,* 125 Ill. 262; *Marvin* v. *Marvin,* 3 Abb. 192; *Brick* v. *Brick,* 66 N. Y. 144; *Lee* v. *Dill,* 11 Abb. Pr. 214; *Reynolds* v. *Adams,* 90 Ill. 134; *Keithley* v. *Stafford,* 126 id. 507; *Tyler* v. *Gardiner,* 35 N. Y. 559; *McLaughlin* v. *McDevitt,* 63 id. 504; Bigelow on Frauds, 476; *Rash* v. *Purnell,* 2 Harr. 457; *Haydock* v. *Haydock,* 33 N. J. Eq. 494; *Taylor* v. *Wilburn,* 20 Mo. 306; *Reynolds* v. *Root,* 62 Barb. 250; *Forman* v. *Smith,* 7 Saw. (N. Y.) 443; *Davis* v. *Rogers,* 1 Huston, 44.

When a confidential relation exists,—such as that of client and attorney, or patient and physician,—between a testator and a large beneficiary under a will, far less will be deemed undue influence than in other cases. Indeed, when the relation is once shown to have existed, it appears to devolve upon the beneficiary to show a clear intention, or that no pressure was brought to bear by him, or by his procurement, upon the testator. Bigelow's note to 1 Jarman on Wills, 36, note 1; *Barry* v. *Butlin,* 1 Curteis, (Eng. Ecc. Rep.) 637; *Walker* v. *Smith,* 29 Beav. 394; *Riddell* v. *Johnson,* 26 Gratt. 152; *Meek* v. *Perry,* 36 Miss. 190; *Wilson* v. *Moran,* 3 Bradf. 172; *Crispell* v. *Dubois,* 4 Barb. 393; *Downey* v. *Murphy,* 1 Dev. & Bat. 82; *Harvey* v. *Sullens,* 46 Mo. 147; *Boyd* v. *Boyd,* 66 Pa. St. 283; *Wright* v. *Howe,* 7 Jones, 412; *Breed* v. *Pratt,* 18 Pick. 115.

Although, ordinarily, it need not be proven that the testator was acquainted with the contents of the will, unless the question is raised, and some circumstances or evidence seem to point to the contrary, yet the fact that Edgar A. Hall brought another lawyer than the one desired by the testator; that he attended the lawyer while the will was being drawn; that he is made executor and residuary legatee, and he and his family, whom the sick man disliked, and to whom he had frequently declared he would leave nothing, are given the bulk of the property, while those who were the objects of the testator's

affections and intended benefactions are left out; that it differs from the testator's oft-repeated declarations of his intentions, and also differs from the disposition the testator had indicated the day the will was executed, and afterward, cast the burden upon the proponents to show that the testator was acquainted with the contents of the instrument. It is said in *Montague* v. *Allen,* 78 Va. 592, that the circumstances that the person who drew the will was in confidential relations with the testator, and his wife was the principal beneficiary, certainly engender suspicion and arouse the vigilance of the court and jury, and if unexplained or repelled they would annul. the transaction. *Tribe* v. *Tribe,* 1 Rob. 775; *Paske* v. *Olcott,* 2 Phil. 323; *Durling* v. *Loveland,* 2 Curt. 225; *Baker* v. *Batt,* 2 Mod. P. C. 317.

Messrs. Brandt & Hoffman, and Messrs. Comstock & Hess, for the appellees:

Appellees were not required by law to produce in court the original will. There was no dispute as to the terms of the will.

The testimony of the subscribing witnesses, when read in evidence, made. a *prima facie* case, and threw the burden of proof on the complainant. *Holloway* v. *Galloway,* 51 Ill. 161; *Potter* v. *Potter,* 41 id. 83; *Carpenter* v. *Calvert,* 83 id. 71.

Appellees were not bound to prove the execution of the will, as that was not put in issue. *Carmichael* v. *Reed,* 45 Ill. 108.

A party is not permitted to state one case by his bill and another case by the testimony. *McKay* v. *Bissett,* 5 Gilm. 499; *White* v. *Morrison,* 11 Ill. 361; *Rowan* v. *Bowles,* 21 id. 17.

The court properly instructed the jury to find the will valid. As to the undue influence required, see *Roe* v. *Taylor,* 45 Ill. 491; *Rutherford* v. *Morris,* 77 id. 397; *Allmon* v. *Pigg,* 82 id. 149; *Yoe* v. *McCord,* 74 id. 33; *Brown* v. *Riggin,* 94 id. 560; *Freeman* v. *Easly,* 117 id. 317; *Bice* v. *Hall,* 120 id. 597.

A man may disinherit even his children, and give his entire property to strangers. *Heuser* v. *Harris,* 42 Ill. 429; *Uhlich* v. *Muhlke,* 61 id. 523; *Freeman* v. *Easly,* 117 id. 317.

Mr. JUSTICE BAKER delivered the opinion of the Court:

With reference to the statutory proceeding to contest, by bill in chancery, the validity of a will, it is expressly stated in the statute (Rev Stat. 1874, chap. 148, sec. 7,) that the issue shall be tried by a jury; and it follows, that in regard to the action of the court in taking the case from the jury and directing a verdict against the contestant, the same rule must be applied that obtains in respect to trials in suits at law. The rule in actions at law is, that when the evidence given at the trial, with all the inferences that could justifiably be drawn from it, is so insufficient to support a verdict for the plaintiff, that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant. *Phillips* v. *Dickerson,* 85 Ill. 11; *Frazer* v. *Howe,* 106 id. 573; *Simmons* v. *Chicago and Tomah Railroad Co.* 110 id. 346.

It is manifest, then, that if the evidence introduced by appellant was such that it would, in the absence of any rebutting testimony on the part of appellees, have justified a verdict in her favor, then the court erred in instructing the jury to return the verdict they did. And it is equally plain, that if the reverse of this proposition be true, then there was no error in the action of the court.

There is some evidence in the record, but of quite an unsatisfactory character, tending to prove that the testator did not sign or acknowledge the will in the presence of two witnesses, and that it was not attested by two witnesses in the presence of the testator, and it is insisted by appellant this evidence was sufficient to entitle her to have the question submitted to the jury whether the supposed will had been executed and attested as required by the statute. The trial in this suit was *de novo,* and the burden of proof was, primarily, upon the proponents of the will, and they were required to show that the will was in writing, and signed by the testator, or by some

person in his presence and by his direction, and was attested in his presence by two or more witnesses, and that the testator was of sound mind and memory at the time of signing or acknowledging the same. (*Rigg* v. *Wilton*, 13 Ill. 15; *Carpenter* v. *Calvert*, 83 id. 62; *Tate* v. *Tate*, 89 id. 42; *Moyer et al.* v. *Swygart*, 125 id. 262.) The statute expressly provides, that at the trial the certificate of the oath of the witnesses at the time of the first probate shall be admitted as evidence. When the proponents put in evidence the testimony of the attesting witnesses given when the will was probated, covering the points prescribed by section 2 of the Statute of Wills, then the competency of the testator to make a will, and the fact that the will in controversy was signed and attested as required by the statute, were *prima facie* established. The burden of proof then shifted to the shoulders of the complainant, who was seeking to impeach the validity of the will. *Holloway* v. *Galloway*, 51 Ill. 159; *Buchanan* v. *McLennan*, 105 id. 56; *Keithley* v. *Stafford*, 126 id. 507.

The rule which prevails in this State is, that when a bill in chancery is filed for the purpose of setting aside the probate of a will, the complainant in such bill can impeach the *prima facie* case made in favor of the validity of the will, only upon the particular grounds of objection that are alleged in the bill of complaint. In *Carmichael et al.* v. *Reed et al.* 45 Ill. 108, the bill charged mental incapacity and undue influence, and the jury found against the will, but upon the ground, which was insisted upon by complainants in their proofs, that the testator had made two wills, one of which was, and the other was not, properly attested, and that the wife of the testator, for sinister purposes, when directed by the testator to produce for attestation one of these wills, fraudulently produced the other, so that the will of February, 1865, instead of the will of August, 1868, received the proper attestation. The decree was reversed, and it was there said: "It is sufficient to say, in answer to this ground of claim, that it is nowhere alleged

in the bill there was such a substitution of wills, nor any allusion to such a fact; nor is the bill, in any sense, predicated upon such a fact, but simply upon the grounds of undue influence, and incapacity to make a will. * * * The complainants could not prevail on the fact of substitution, if proved, as it is not alleged in the bill. They are not permitted to state a case one way in their bill, and make another and a different case by the testimony."

*Flinn et al.* v. *Owen et al.* 58 Ill. 111, is a still stronger case in affirmance of the rule above suggested. The allegations in the bill were, undue influence of the wife, and that after procuring the execution of the will she obtained possession of it; that the testator desired to destroy it, which she promised to do, and subsequently told him she had destroyed it, upon which assurance he relied. The bill also contained another allegation, the substance of which was, that the so-called will was illegally executed, because the subscribing witnesses did not attest it in the presence of each other. The question to which the evidence was directed, and on which the case was submitted to the jury by the instructions, was, whether both the subscribing witnesses, one of whom was dead, had signed the will in the presence of the testator. The decree was reversed, and the court said: "The *allegata* and *probata* must correspond." And further said: "There were no facts averred in the bill to which the evidence that controlled the case properly applied. The allegation was, in substance, that the witnesses did not sign in the presence of each other, and the evidence offered was to show they did not sign in the presence of the testator." It will be noted that the point, the negative of which was not averred in the bill, was one which the proponents of the will were obliged, in the first instance, to show affirmatively in making out their *prima facie* case.

The rule that imposes upon the assailants of a will the duty of stating in their bill of complaint the ground upon which it is claimed that the will which has already been admitted to

20—134 ILL.

probate is invalid, is eminently just and equitable, since it enables those who claim under the will to prepare for trial upon the real issues upon which the controversy is to be decided, and prevents their being taken by surprise by the testimony introduced.    It is not perceived that it was the legislative intention, in giving this statutory remedy by bill in chancery, to change the rule which prevails in respect to other bills in chancery, that a complainant can not state one case in his or her bill of complaint, and prove another and different case by the testimony.

Our conclusion is, that appellant can take nothing by her claim based upon this branch of the case, and for the reason there is no allegation in the bill showing that the will was not properly signed and attested.

Among other things it was charged in the bill that the testator was induced to execute the will by and through the undue influence and compulsion and fraud of Edgar A. Hall, Zebulon M. Hall and Catherine Hall, and that they misrepresented to him the contents of the instrument which he signed. Did the appellant introduce testimony from which the jury could reasonably infer either the compulsion, misrepresentation, fraud or undue influence alleged in the bill?

The property devised by the will in controversy was of the value of about $100,000.    The substance of that will was, that it gave to appellant, his only sister of the whole blood, who was a widow with several children, a farm worth some $7000; to Ellen Nelson, his aged housekeeper, a life estate in twenty acres of land; to his brother of the half blood, and two sisters of the half blood, all of whom were residents of distant States, the sum of $1500 each; and disposed of the residue of the estate by making various devises to his brother, Zebulon M. Hall, and each of the four children of the latter, and by making one of said children, Edgar A. Hall, residuary devisee and legatee, and executor.

Since, in the view we take of the case, the issues must be submitted to another jury, we do not deem it advisable to discuss the evidence in detail. Suffice it to say, that there was testimony from which the jury might legitimately have reached these conclusions, to-wit: That the disposition made by Loammi Hall of his property, in the instrument which he signed, was not, in some respects, in accord with his probable intentions; that he believed he had been wronged and injured, pecuniarily, by improper conduct of his brother, Zebulon M. Hall, and harbored feelings of resentment and dislike towards him; that for some time he had not been on intimate terms with him or his family; that when it became apparent that he was stricken with mortal sickness, this brother, with his wife and children, came to his house and farm, and virtually assumed control both of his premises and person, much to his discontent and dissatisfaction; that Zebulon M., Catherine and Edgar A. were all anxious he should make a will, and that one of them incited the old housekeeper, Mrs. Nelson, by a bribe, to induce him to make a will, and that when the matter was suggested to him by her, he at once consented to do so, nothing being said as to the terms of such will. Further, that the deceased at once sent the said Edgar A. Hall to Norwood Park to get Judge Collins to prepare the will; that he did not get Judge Collins, but consulted with another lawyer of his own selection, and the next morning brought such other lawyer to the house; that the will was written by such lawyer in the presence of said Edgar A. and the testator, no other person or persons being present; that the testator, although sensible and apparently in his right mind, was a very sick man, and very weak in body, and able to speak but a few words at a time, and that he that morning said to Mrs. Nelson, "that he was so sick he could hardly make his will, but was forced to do it; that she should keep still, because they would almost kill him, and that he would do all they wanted if they would only leave him alone." Further, there was no evidence,

either in the *prima facie* case made by appellees, or otherwise in the record, except the presumption arising from the fact of execution, tending to show that the instrument in question was either read over to the testator, or he was in any way informed of its contents.

The law, in the absence of all evidence, will presume that a person who executes a will or other instrument, does so with knowledge of its contents; but this is a presumption which will readily yield to evidence tending to show that such was not the fact. (*Keithley* v. *Stafford*, 126 Ill. 507.) Naturally, the mind sympathizes with the body in that which debilitates, and, even when not otherwise impaired, it may become so wearied from long continued, serious and painful sickness, that it is willing to purchase rest and quiet at any price, and when in that condition it is susceptible to undue influence, and is liable to be imposed upon by fraud and misrepresentation. The feebler the mind of the testator, no matter from what cause,—whether from sickness or otherwise,—the less evidence will be required to invalidate the will of such person. (See *Reynolds et al.* v. *Adams*, 90 Ill. 134.) So, also, the doctrine is, and it seems to be based on strong grounds of reason and justice, that where a will is written or procured to be written by a person largely benefited by it, it is a circumstance to excite stricter scrutiny, and requires stricter proof of volition and capacity. See 1 Jarman on Wills, (4th Am. ed.) 42, and cases there cited. And the increased strictness of scrutiny and proof required in cases of that character is such as to give full and entire satisfaction to the court or jury that the testator was not imposed upon, but that he knew what he was doing and the dispositions he was making when he made his will. Ibid. 45, and cases cited.

Without further discussion of the matter we may announce that our conclusion is, that under the circumstances of this case, and in view of the fact that the will gave the bulk of a large and valuable estate to Edgar A. Hall and his immediate

relatives, and that said Edgar did not get the lawyer in whom the testator had trust and confidence, and whom he desired should draw his will, but procured the services of another lawyer of his own selection, and that the will was prepared by such lawyer in the presence of said Edgar and the testator, no one else being present, and that all the testimony introduced by appellees, or otherwise in the record, may be true, and yet the fact be that the will was not read to the testator or he otherwise informed of its contents, the duty and burden were imposed upon the proponents of the will to show that the testator, when he signed the will, knew what disposition he was making of his property. We think the court erred in taking the case from the jury, and directing them, peremptorily, to return a verdict in favor of the validity of the will.

The further point is made by appellant, that it was error to permit the defendants to the bill to introduce in evidence a certified copy of the will, and the order of the court admitting it to probate. While the statute provides for the admission in evidence of the testimony taken at the time of the first probate, yet the trial of the issues in the chancery suit is *de novo*, and without regard to the fact that the instrument has been admitted to probate. (*Rigg* v. *Wilton*, 13 Ill. 15.) It follows, that the order of court in question was not proper or competent evidence, and it was calculated to influence the verdict of the jury in favor of the validity of the will. The statute authorizing a bill in chancery to contest the validity of a will says, in terms, that "an issue at law shall be made up whether *the writing produced* be the will of the testator or testatrix, or not." It is manifest from its language that the statute contemplates that the original writing shall be produced in evidence at the trial. Where the charge in the bill is, that the writing is a forgery, or has been changed since it was signed or acknowledged and attested, and in other cases which might readily be suggested, it would seem the production of the original would be of the utmost importance, and it

is. possible that in almost any case of a contested will there may be something apparent upon the face of the instrument which will shed light upon the questions at issue. There is nothing in this view which is inconsistent with section 18 of the Statute of Wills. We think that in trials of the kind now under consideration, either the original writing should be produced, or good cause shown for not producing it.

In that which we have said in respect to the introduction in evidence of the order of the probate court and of the certified copy of the will, we do not wish to be understood as holding that such introduction would in all cases be reversible error, or even that, under the circumstances of the present case, the rulings of the court in that behalf would afford, of themselves, sufficient ground for reversing the decree.

The decree is reversed, and the cause remanded for another trial.

*Decree reversed.*