83  377<br>s184s438

## Inter Ocean Publishing Co. v. The Associated Press.

1. CONTRACTS—*Can Not be Enforced by Piecemeal.*—If a contract is legal and binding upon a party he can not disregard the plain provisions of one part of it which he deems harsh or burdensome, and at the same time have a court of equity enforce another part which he thinks advantageous to him as a valuable property right.

2. EQUITY PRACTICE—*Recovery to be upon the Grounds Stated in the Bill.*—No relief in equity can be granted without appropriate allegations in the bill upon which to base such relief. The recovery must be upon the grounds stated in the bill.

Bill for an Injunction.—Trial in the Circuit Court of Cook County; the Hon. APRA N. WATERMAN, Judge, presiding. Decree dismissing the bill; appeal by complainant. Heard in this court at the October term, 1898. Affirmed. Opinion filed June 29, 1899.

Statement.—Appellant is an Illinois corporation, and had, for some time prior to March, 1893, been engaged in

the publication of a daily and also a weekly newspaper at Chicago, its principal place of business.

The appellee is also an Illinois corporation, organized in the year 1892, for pecuniary profit, and the purpose for which it was organized was " To buy, gather and accumulate information and news; to vend, supply, distribute and publish the same; to purchase, erect, lease, operate and sell telegraph and telephone lines, and other means of transmitting news; to publish periodicals, to make and deal in periodicals and other goods, wares and merchandise." Appellee's stockholders are exclusively the proprietors of newspapers, and its principal and only business is buying, gathering and accumulating information and news, and the distribution and furnishing of the news so gathered to persons and corporations who have entered into contracts therefor with appellee, in the form prescribed by its by-laws, and the persons and corporations to whom and for whose benefit the said news is so gathered, in and by the by-laws of appellee, are designated or termed members, but many of the persons and corporations to whom the news so gathered is furnished under said contracts are not stockholders. The term members, used in the by-laws of appellee, is not limited or restricted to its stockholders, but applies to all proprietors of newspapers who may or shall at any time enter into a contract with appellee for procuring the news furnished by it. Appellee has not availed itself of its power or franchise to purchase, erect, lease, operate and sell telegraph and telephone lines, nor has it availed itself in any way of the power of eminent domain granted it by its charter. It has also confined its business to its members exclusively, and has not sold nor distributed its news to any person or corporation not a member, though it sells the information and news accumulated by it to the proprietors and publishers of nearly all the principal newspapers published in the United States of America, all of such proprietors and publishers being its members.

The by-laws of appellee were adopted and ratified by its stockholders December 21, 1892, which was prior to the

time that appellant became a stockholder of appellee, and prior to appellant's contract with appellee, which is in question in this case.

These by-laws have, among other provisions, the following, to wit:

"Article XI, Section 8.    Sale or Purchase of Specials.— No member shall furnish or permit any one to furnish its special or other news to, or shall receive news from, any person, firm or corporation, which shall have been declared by the board of directors or the stockholders to be antagonistic to the association; and no member shall furnish news to any other person, firm or corporation engaged in the business of collecting or transmitting news, except with the written consent of the board of directors."

" Article XIV, Section 1.    Board may Suspend.—The board of directors shall have the power, by a two-thirds vote of the whole board, to suspend a member or impose upon him a fine not exceeding $1,000 for furnishing news to any person or association antagonistic or in opposition to the Associated Press; or for purchasing news from any person or organization formally declared by the board of directors, or by the stockholders of the association, at any annual or special meeting, to be in such antagonism or opposition, or for any other violation of the by-laws or his contract; provided, always, that ten days' notice, in writing, of a complaint, be first served upon the offending member, and said member shall have an opportunity to be heard in his own defense, and if said member shows that the offense was unintentional, and shall have discontinued the same, he shall not be suspended."

They further provide a method of appeal from orders of suspension and for forfeiture of membership in case the action of the board should be sustained.

March 2, 1893, appellant, then being a stockholder of appellee, made an agreement with appellee by which the latter sold to appellant the night news report of appellee for the term of ninety-two years, for publication in appellant's newspaper, which appellant agreed to receive, and pay therefor $103 per week in advance, and any additional weekly assessments made by appellee, not exceeding fifty per cent of the amount of said weekly installment.    Appellant also agreed to furnish to appellee the news, local and

telegraphic, within a radius of sixty miles of Chicago, in accordance with the requirements of appellee's by-laws. By the contract appellee reserved the right to change the weekly assessment of appellant without limit, which appellant agreed to pay as long as it took the news report, but in case such changed assessment should exceed fifty per cent of the weekly payment of $103, appellant had the right to terminate the contract and surrender its stock to appellee, for which the latter should pay the par value thereof. The contract also contained the following, among other provisions, to wit:

"6th. Said party of the second part covenants and agrees that it will not furnish before publication any news to any person or corporation engaged in the business of collecting or transmitting news except upon the written consent of the board of directors of the party of the first part first had and obtained; and that it will not furnish to any person any of the news received by it under this contract before publication by it; and that it will not furnish its special or other news to or receive news from any person or corporation which shall have been declared by the board of directors of said party of the first part antagonistic to said party of the first part, after having received notice of such declaration.

"7th. It is further mutually agreed between the parties hereto that the rights, duties and obligations of the respective parties hereto, except as hereinbefore specifically provided for, shall be controlled and governed by the by-laws of said party of the first part now or hereafter in force during the life of this contract; and that the right to receive news under this contract may be suspended or terminated in the manner and for the causes specified in said by-laws.

"9th. Said party of the first part promises and agrees not to furnish any news report to any newspaper published in the said territory described in this contract not now entitled to receive the same under the by-laws of said party of the first part, without the written consent of the said party of the second part or its assigns.

"10th. Said party of the second part has assigned and transferred its stock in the said party of the first part to the said party of the first part, which stock is to be held by said party of the first part as security for the performance by said party of the second part of this contract on its part. Said party of the second part, in consideration of the mak-

ing of this contract by said party of the first part, hereby covenants and agrees that it will not sell or part with any interest in said stock to any party who shall not be the proprietor of a newspaper which shall at the time be on the membership roll of said party of the first part; and that it will keep and observe and perform all the requirements of the by-laws of said party of the first part now or hereafter in force during the life of this contract."

The contract was signed, viz.:

" The Associated Press,
Wm. Penn Nixon, President.
Delavan Smith, Secretary. [Seal]
The Inter Ocean Publishing Co.
Wm. Penn Nixon, Secretary and Treasurer."

Contracts substantially of the same import as the one with appellant have been made from time to time since December, 1892, between appellee and the proprietors and publishers of a majority of the leading newspapers throughout the United States, which contracts have been enforced by appellee; and appellant had not, until the filing of the bill in this case, made any objection to the enforcement of appellee's by-laws against its members or stockholders regarding the receipt of news service from persons or corporations antagonistic to appellee, and on at least two occasions, in the years 1894 and 1895, made complaints to appellee of violations of the by-laws by other members in this respect.

William Penn Nixon, who signed appellant's contract with appellee as president, was appellee's president to February, 1894, and was also secretary of appellant from the date of said contract to the filing of the bill in this case, as well as editor in chief of appellant's newspaper from May, 1894, to November 18, 1897.

Upon complaints being made to appellee in December, 1897, and in January, 1898, by the Chicago Herald Company and The Chicago Daily News Company, respectively, that appellant had violated its said contract with appellee, and had also violated section 8 of article 11 of appellee's by-laws, by receiving news from The Sun Printing and Publishing Association of New York City, The New York Sun

of New York City, and The Laffan News Bureau of New York City, all of which concerns had been declared by appellee's board of directors to be antagonistic to appellee, and asking that said contract and section 8 of article 11 of the by-laws be enforced, appellee gave notice to appellant that a meeting of appellant's board of directors would be held at a time and place named to take action on said complaints.

Before the time set for hearing said complaints appellant filed its bill seeking an injunction against appellee from suspending or expelling it from its membership, from refusing to give appellant news as required by the terms of said contract, and from doing any act or thing tending to deprive appellant of the service of appellee, as provided in the contract, and for all such other relief, both general and special, as to the court may seem just, etc.

It is alleged by the bill, in substance, that while appellee's charter gives it the right to vend and supply news generally to all persons who will pay for the same the price fixed by appellee, and also gives to appellee the power of eminent domain, appellee, in violation of its public obligations under its charter, vends and supplies its news exclusively to its members, and has by this means been able to control the business of buying and accumulating news and selling the same, and thus to create in itself an exclusive monopoly or trust in that business; that appellee has, in order to create such exclusive monopoly or trust, declared that The Sun Printing and Publishing Association of New York, which appellee claims to be a rival or competitor in business, is antagonistic to appellee, and has prohibited the members of appellee from buying news from said Sun Printing and Publishing Association, under pain of suspension and expulsion from appellee; that appellee had at various times, by threats of suspension and expulsion, made under its by laws, forced and compelled divers of its members to cease buying the special news of said Sun Printing and Publishing Association, under divers valid and subsisting contracts between said members and said association to purchase special news

which they could not obtain from appellee, the details of which contracts and the names of said members are set out in the bill; that the action of appellee, in serving the notices on appellant for a hearing on said complaints against appellant, is similar in kind to appellee's initial action against its other members above referred to, which resulted in their being forced to cease buying special news from said Sun Printing and Publishing Association; that appellant is in duty bound, both to its patrons and the public, to publish all the news, and if it be not able to obtain such news from one source, it must, in justice to its patrons and the public, obtain the same from other sources, if the same be possible; that the news which it obtains from appellee it was and is unable to obtain from any other source, and that appellee would not furnish such news to appellant unless it executed with appellee the contract hereinbefore set out, but, on the contrary, refused to furnish such news except upon the execution of said contract, and appellant was forced to and did execute such contract; that appellee does not furnish all the news to appellant under the said contract, and to obtain the news not so furnished appellant has been and is forced to resort to other sources, among which is the The Sun Printing and Publishing Association of New York; that appellant is not now, and never has been, furnishing news to The Sun Printing and Publishing Association, the New York Sun, or the Laffan News Bureau of New York, as charged in said complaints, and that this The Chicago Daily News Company, through its officers, well knew when it made its said complaint; and appellant charges the fact to be that the complaint last aforesaid is made in collusion with appellee, and solely for the purpose of annoying and harassing appellant; that said contract between appellee and appellant is a valuable property and property right, but that the news to be furnished under it is not all the news needed by appellant in publishing its newspapers; that certain news which appellant absolutely must have, it is unable to obtain from appellee, and appellant is forced to obtain the news not obtainable from appellee from The

Sun Printing and Publishing Association; that appellee, in attempting to force appellant to cease taking news from The Sun Printing and Publishing Association, is endeavoring to work irreparable injury and damage to appellant, and tends to create a monopoly in appellee.

Appellee admits it has declared The Sun Printing and Publishing Association to be antagonistic to appellee, and has prohibited its members from buying news from said association, and also admits that appellee would not have furnished its news to appellant if the latter had not made the contract in question herein.

The cause was heard upon the bill and answer of appellee, both of which were under oath, and certain affidavits, all of which were read and used as depositions in the cause, and a decree rendered dismissing the bill for want of equity.

The facts as above stated, among others which we deem it unnecessary to set out, appear from the bill, answer and affidavits.

DAVID J. BAKER, EGBERT JAMIESON and JOHN A. ROSE, attorneys for appellant.

JOHN P. WILSON, attorney for appellee; T. A. MORAN, of counsel.

MR. JUSTICE WINDES, after making the foregoing statement, delivered the opinion of the court.

It appears from the foregoing statement that appellant is seeking to enforce specifically one part of a contract between it and appellee, when it is also shown that appellant has disregarded and violated another part of the same contract. In other words, appellant asks this court to allow it to retain its membership and stock in the Associated Press, and have the benefit of the news accumulated by the latter, at the contract price, without complying with that part of the contract which requires appellant to refrain from receiving news from any person or corporation which has been declared by appellee's board of directors antagonistic to appellee, and without appellant being controlled or governed

by the by-law of appellee to the same effect, which appellant, by the contract, agreed should control and govern it during its membership in appellee.

It needs no argument nor the citation of any authority to establish the proposition that, if the contract in question is a legal one, and binding upon appellant, it can not disregard and violate the plain provisions of one part of its contract which it deems harsh or burdensome, and at the same time have a court of conscience enforce another part of the same contract which it thinks advantageous and a valuable property right.

But it is contended by appellant's counsel that appellee, by the adoption of its by-laws and its insistence upon the contracts with its members, has created a monopoly in its business which by the common law is affected with a public interest; that the provision of appellant's contract with appellee, which prohibits appellant from receiving news from any person or corporation which appellee shall have declared antagonistic to appellee, is illegal as being in restraint of trade; that appellee's by-law to the same effect is unreasonable and void, and that because of the public nature of appellee's business, which it is said is a monopoly, or trust, appellee should be compelled to serve the public equally and for a reasonable compensation. We deem it unnecessary on this record to decide that appellee's business is a monopoly, or that its business is affected with a public interest, or that the said provision in the contract is illegal, or that the said by-law is unreasonable and void, for the reason that all these matters are immaterial in view of the case made by appellant's bill, and therefore do not discuss the several questions so fully and ably presented by the briefs of counsel. But if it be conceded that all these contentions of appellant are established, and that it follows, as matter of law, that appellee should be compelled to serve the public equally and for a reasonable compensation, appellant's bill can not be maintained. The prayer of the bill only asks for relief based upon appellant's alleged rights as they are claimed to be under the contract between appellant and

appellee.    Omitting the preliminary and formal facts, it asks
an injunction, viz.:

"From suspending or expelling the complainant from its
membership, and from refusing to give to the complainant
its news, as required by the terms of the said contract, and
from doing any act or thing tending to deprive the com-
plainant of the service of the defendant, as provided in the
said contract; and that on the final hearing of this cause
the said preliminary injunction may be made perpetual, and
that your honor will grant to the complainant all such
other relief, both general and special, as to the court may
seem just and the nature of the case may require."

Appellant's right, if any, to be protected from being sus-
pended or expelled from membership, rests upon its com-
pliance with its contract with appellee and its obedience to
the by-laws.    As we have seen, the contract contains a pro-
vision that appellant shall be controlled and governed by
the by-laws.    Therefore this part of the relief asked is based
upon the contract which appellant has violated.    All the
other specific relief asked is in the express words of the
prayer based upon the contract.    Counsel, in their reply
brief, say that the bill "does base its (appellant's) right to
receive the news of appellee upon the contract," but claims
that the contract is a regulation of appellee's business, by
which it has fixed what it deems a reasonable compensa-
tion for the news furnished by it to appellant.    The prayer
for general relief is not sufficient to allow an injunction
which would restrain the appellee, independent of the con-
tract, from refusing to give appellant, as one of the public,
the news which had been accumulated by appellee, upon
the payment of a reasonable price therefor, because there
are no allegations in the bill on which to base any such
relief.    The bill does not allege that appellant ever claimed
or that it ever requested a news service from appellee, other-
wise than under the contract in question, nor does it allege
that the price agreed upon in the contract would have been
or was a fair and reasonable price for the news agreed to
be furnished by appellee, independent of the services by
the contract agreed to be rendered by appellant to appellee
which was to furnish appellant with the news within a

radius of sixty miles of Chicago, and also independent of a compliance with other provisions of the contract and obedience to appellee's by-laws. All the allegations of the bill are based upon appellant's alleged rights under and by virtue of said contract, and upon the claim that it should be enforced when stripped of the provision claimed to be illegal. It is a familiar rule of chancery that no relief can be granted without appropriate allegations in the bill on which to base such relief. Recovery must be had, if at all, on the grounds stated in the bill. Flinn v. Owen, 58 Ill. 111; Purdey v. Hall, 134 Ill. 298, 305; T. H. & I. R. R. Co. v. P. & P. U. Ry. Co., 167 Ill. 296, 307; Lane Union Nat. Bk., 75 Ill. App. 299.

Without the allegations above indicated no relief, as contended for by appellant, could be granted under the prayer for general relief.

The decree dismissing the bill for want of equity is therefore affirmed.