## Marquette Cement Manufacturing Company v. Grant Williams.

### Gen. No. 4,778.

1. RE-DIRECT EXAMINATION—*what not proper upon.* It is not competent to ask a witness upon re-direct examination whether he made a statement which upon direct examination he has denied to have made but which upon cross examination he has admitted making.

Action in case for personal injuries. Appeal from the Circuit Court of LaSalle county; the Hon. RICHARD M. SKINNER, Judge, presiding. Heard in this court at the October term, 1906. Affirmed. Opinion filed March 13, 1907.

MCDOUGALL, CHAPMAN & BAYNE and DUNCAN, DOYLE & O'CONOR, for appellant.

THOMAS KENNEDY, ELMER E. ROBERTS and BROWNE & WILEY, for appellee.

MR. JUSTICE WILLIS delivered the opinion of the court.

This was an action on the case brought by appellee, Grant Williams, in the Circuit Court of LaSalle county, against appellant, The Marquette Cement Manufacturing Company, to recover for injuries alleged to have been sustained by him while employed in appellant's cement works.

The declaration, after certain counts thereof had been dismissed, charged in substance that appellant was engaged in the manufacture of cement and had

in its plant certain electric motors, one of which was so situated that its starting machinery or switch was not visible from the motor; that said motor got out of repair, and that it was the duty of appellee to stop and repair it when so ordered by appellant's electrician; and that said electrician was not a fellow-servant with appellee; and averred that while appellee was so engaged in repairing said motor under the orders of the electrician, and in the exercise of due care for his own safety, appellant negligently started the motor, and thereby the right hand and wrist of appellee were caught and so injured that an amputation thereof was necessary. There was a plea of the general issue, a trial had before a jury, resulting in a verdict for $7,500 for appellee, motions for a new trial and in arrest of judgment overruled, judgment entered on the verdict for $7,500 and costs, and this appeal to review the proceedings.

On the main floor of one of the buildings of appellant's plant, there were nine motors, eight of them having a switch near by to cut out or disconnect them, while the ninth, the one on which appellee was injured, had its switch in the basement, out of sight of a person at the motor. On January 30, 1903, the day of the accident, appellee and Fred McNeil were working on electrical work. The ninth motor got out of oil and very hot and was likely to catch fire and burn out. This had happened to another motor some days before, and McNeil had then told appellee to watch and prevent their burning out and repair them. When appellee found the motor likely to get on fire in a few minutes, burn out and destroy valuable machinery, he went to John Coleman, foreman for appellant, and told him the condition of the motor; but Coleman refused to have it stopped as there was certain work to be done by that particular motor at the time. Appellee then went to McNeil, who was in the engine room, and told him they would lose a motor in a few minutes if something was not done. McNeil ran

down and looked at it with appellee, then stepped a few feet aside, talked with Coleman a few minutes, came back and told appellee to go down and shut off the switch, and come back and repair the motor, and he would watch and see that no one started it while it was being repaired. Appellee ran down stairs to the switch, pulled the lever over and dropped it down, then slid the switch bar off the button it rested on while in operation, and went to William Crockett, who was in charge down stairs, and told him what he had done, that he was going to repair the motor, and not to let anyone start it until he was through. Crockett seems to have understood what was said. Appellee then went back to the motor, and finding the oil nearly gone, put his hand through certain parts of the machinery of the motor to adjust the place where the oil was leaking, at which instant some one threw the switch into place, the machinery started and appellee's hand and wrist were so badly crushed that an amputation thereof was necessary.

Appellant contends that the evidence shows that McNeil and appellee were fellow-servants, and that appellee was injured through the negligence of McNeil, and therefore cannot recover; and, moreover, that the evidence showed that there was an absolutely safe way of disconnecting the motor, and appellee having chosen to use the dangerous, instead of the safe way, is without redress.

Appellee testified that he was an electrician; had followed this work for several years prior to the accident; that a few days after his employment with appellant he was put to work in the electrical department, of which McNeil, from whom he received his orders, was in charge; and that a short time prior to the accident McNeil said to appellee that he had charge of and was running the electrical department, and that when appellee saw a motor out of repair he should stop it and fix it. Appellee's evidence further shows that, just prior to the accident, McNeil told him to

watch the motor a few minutes, then stop and repair it, and that he would see that nobody started it while it was being repaired.

McNeil testified on behalf of appellant that he was an electrician in the employ of appellant at the time of the accident, and in charge of the electrical equipment; that it was his duty to take care of the motors, generators, wiring and lighting; that appellee had acted as his assistant for about five months; that he and appellee looked the motor in question over, found what was the matter with it, and he told the foreman of the mill that the motor must be shut down; that the foreman said he would notify him when the motor could be shut down; and that he, McNeil, instructed appellee to shut it down and repair it as soon as it could be done. He further testified that appellee worked under and took orders from him. On cross-examination McNeil testified that the motor was in bad condition, and said that he might have told appellee that he would see that the motor was not started while being fixed. It is true McNeil testified that he had no authority to hire or discharge men; but he said that when he found it necessary to have men, they would be put on; and also that if a man did not suit him, he got rid of him; he could tell him to go home, and would tell his superior he did not want him any more. Whether McNeil and appellee were fellow-servants, therefore, was a question of fact for the jury.

It is true the evidence shows that to have disconnected the wire at the motor would have made it thereafter safe to repair the machinery; but that was not the method appellant had provided for cutting out the motor, the switch being the only method provided for that purpose. All the other switches were placed near their motors, and it is a question whether it was not negligence not to have this switch next to the motor. Be that as it may, appellee was called upon to act in a sudden emergency. Valuable property was

about to be destroyed, and prompt action was necessary to save it. He used the method provided by appellant, and it was for the jury to say whether, in that emergency, he should have thought of a safer way and employed it. The fact is, that his principal ordered him to disconnect the switch and do what he did, and that he was acting in obedience to that order, and under the assurance of the foreman that he would be protected while doing it, upon which he had a right to rely.

The trial court did not err in overruling the motion to exclude the evidence and direct a verdict for appellant.

It is claimed by appellant that the trial court erred in the admission of improper evidence for appellee. As to the most of these objections, we find the position of appellant not well taken and the questions not properly preserved for review. Some of the questions so complained of were on cross-examination and not subject to appellant's criticism.

It is also claimed by appellant that the trial court erred in refusing to admit competent evidence offered on its behalf, and it calls our attention to the following question asked of the witness McNeil, to which an objection on the part of appellee was sustained: "Did you say at that time or at any other time that you would stay there and watch the motor and see that no one started it, or that in substance, while he was making repairs on it?" This question was competent, but the whole ground had been gone over on the direct examination, the witness denying that he had made this statement, and on cross-examination, where he finally admitted he did make it. Appellant was not entitled to re-examine him on that subject, and there was no error on the part of the trial court in sustaining appellee's objection thereto. Moreover, the question was suggestive and improper, in view of the previous examination of the witness.

Appellant urges that the trial court erred in refus-

ing instructions designated in its brief as numbers 38, 39 and 40. In number 38 the court was asked to instruct the jury that McNeil and appellee were fellow-servants. This we have already held was a question of fact for the jury. Numbers 39 and 40, relating to the question of fellow-servants, omitted all reference to the proof that McNeil was appellee's superior and had authority to direct his acts. The court, however, gave other instructions for appellant on that subject which sufficiently stated the law, and there was no error in the court's refusing the instructions referred to.

We cannot agree with counsel for appellant that the language and conduct of appellee's counsel complained of call for a reversal of this judgment; nor do we feel warranted in saying that it should be reversed because the damages are excessive.

Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*