GEORGE WALKER *et al.* Appellants, *vs.* MRS. R. J. STRU-
THERS *et al.* Appellees.

*Opinion filed April 20, 1916—Rehearing denied June 21, 1916.*

1. PLEADING—*allowance of amendments in chancery is largely
within the discretion of the trial court.* The allowance of amend-
ments in a chancery suit is largely within the discretion of the
trial court, and a court of review will not reverse for refusal to
allow an amendment unless there is shown a manifest abuse of
such discretion.

2. SAME—*what not an abuse of discretion in denying leave to
file amended bill.* Denying leave to file an amended bill is not an
abuse of discretion where the cause has been pending more than a
year and the application is made only one court day before the
cause is set for trial and where no reason is presented why the
application for leave was not presented earlier.

3. EQUITY—*either party has right to insist that litigation shall
not be unduly prolonged.* Either party to a chancery suit has a
right to insist that the litigation be not unnecessarily prolonged.

4. SAME—*complainants cannot make one case by their bill and
another by their proof.* Complainants in a proceeding in chancery
to contest a will are confined to the allegations of their bill and
cannot rely upon grounds other than those stated therein for im-
peaching the validity of the will.

5. WILLS—*certificate of oath of subscribing witnesses makes a
prima facie case for proponents of a will.* Under the statute the
certificate of the oath of the subscribing witnesses to a will at the
time of the first probate of the will, covering the points in sec-
tion 2 of the Statute of Wills, may be admitted as evidence in a
proceeding to contest the will and when admitted makes a *prima
facie* case for the proponents, and the burden is then upon the con-
testants to impeach the validity of the will, but they can do so
only on the particular grounds alleged in the bill.

6. SAME—*when contestants cannot raise the question of com-
petency of a subscribing witness.* Where the oath of a subscrib-
ing witness at the time of the probate is given in evidence in a
proceeding to contest a will but the subscribing witness does not
testify personally, the contestants cannot, in the absence of any
allegation in their bill to such effect, raise the question of the in-
competency of the subscribing witness by reason of his deriving
an interest under the provisions of the will.

7. SAME—*non-expert witnesses must state the facts upon which
they base opinions as to mental capacity of testator.* Before non-

expert witnesses may give their opinions as to the soundness or unsoundness of the mind and memory of the testator they must state sufficient facts upon which to base their opinions, and the trial court must determine whether the witnesses state sufficient facts upon which to predicate their opinions.

8. SAME—*when a person is mentally competent to make a will.* One who is able to transact in person all of his business deals in buying and selling stock, to bank his money and check out the same, to give to the assessor, from memory, correct lists of his property and its valuation, and to manage his business generally, has sufficient mental capacity to make a will, in the absence of any question of insane delusions.

9. SAME—*what testimony is competent on the question of mental capacity.* Persons who have known the testator and transacted business with him may testify that they noticed no difference in his mental ability from the time they first knew him to the time they last saw him, and that he knew the market prices of stock, read the newspapers and was posted on current events of the times.

10. SAME—*what does not disqualify witnesses for proponents.* The fact that witnesses testifying to the soundness of mind of the testator live in the township whose indigent inhabitants are entitled, under the will, if deemed worthy by the trustee, to receive free medical attention and nursing in the hospital which is the principal beneficiary, does not disqualify them as witnesses.

11. SAME—*witnesses cannot be cross-examined as to making written statements to counsel.* Written statements of witnesses to attorneys in preparation for trial, and all notes and briefs made by the attorneys for that purpose, are the property of the attorneys, and they cannot be required to produce them for the benefit of opposite counsel, nor can opposite counsel cross-examine the witnesses to ascertain if written statements have been made by them.

12. SAME—*burden of proof is on the contestants.* Where the proponents in a proceeding to contest a will make a *prima facie* case in favor of the validity of the will, the burden is upon the contestants to overcome not merely the *prima facie* case but also the added legal presumption in favor of sanity, by a preponderance of the evidence on the whole case.

13. SAME—*an insane delusion defined.* An insane delusion is a false belief for which there is no reasonable foundation, and which would be incredible, under the given circumstances, to the same person if of sound mind, and concerning which the mind of the person so believing was not open to permanent correction through evidence or argument.

14. SAME—*what does not tend to show insane delusion.* Proof that the testator, some four days after receiving a very severe injury and some eleven years before making his will, thought his relatives had influenced a certain physician to poison him does not tend to show an insane delusion, where the evidence does not show that he persisted in his delusion, but, on the contrary, that he subsequently visited his relatives and ate meals with them.

15. INSTRUCTIONS—*when rule as to the time for presenting instructions does not justify refusing one.* A rule of court requiring instructions to be passed up for consideration before the argument to the jury is begun, does not justify refusing one offered thereafter to correct an erroneous impression which the jury may have received from a statement made by counsel in the argument; but the refusal of such instruction will not necessarily constitute reversible error.

COOKE, J., dissenting.

APPEAL from the Circuit Court of Henry county; the Hon. F. D. RAMSAY, Judge, presiding.

J. T. & S. R. KENWORTHY, and ANDREWS & ESPEY, for appellants.

HARRY E. BROWN, and HENRY WATERMAN, for appellees.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Appellants, as the only heirs-at-law of William Walker, deceased, filed their bill in the circuit court of Henry county October 21, 1913, to contest and set aside the will of said deceased. The will was signed by the testator September 30, 1910, and was attested by two witnesses, Charles M. Morton and Wilber F. Spencer, the latter then being a stockholder in the Central Trust and Savings Bank of Geneseo. Arthur Cook, cashier of said bank, is named as executor in the will. The testator died February 9, 1913, and the will was duly probated. By the third and fourth clauses thereof the testator bequeathed to George Walker, Alexander Walker and Ellen Richmond, his two brothers and his

sister, the sum of $200 each, and to every one of ten nieces and nephews therein named the sum of $100, all to be paid out of his personal estate. By the fifth clause thereof he devised his farm in the said county, of the value of about $50,000, to said bank in trust, as follows: To farm, lease, manage and control and to collect the rents and profits thereof and to repair and properly improve the same to get the best possible income, and out of the income therefrom to pay all taxes lawfully levied thereon and the repairs and improvements and maintenance thereof and the costs and expenses of said trust, and to pay the net annual income to the trustees of the J. C. Hammond Hospital, of Geneseo. By the sixth clause the testator directed his executor to collect, sell and convert into money all the residue of his estate, both real and personal, of the value of about $25,000, and to pay from the proceeds thereof his debts and said legacies and the costs and expenses of administration, including a suitable monument for his grave, and the remainder to said trustee, to invest and re-invest in good interest or income-producing securities and to manage and control the same to produce the best annual income, and out of the income to pay all taxes and expenses and costs of management and execution of said trust and to pay the net annual income to the trustees of said hospital. The seventh clause provides that said annual funds paid to the trustees of said hospital, as provided by the fifth and sixth clauses, shall be used to pay the hospital, medical and nursing expenses of all citizens of the townships of Munson and Geneseo, in said county, who in the judgment of his trustees may be worthy, poor and in need of treatment while in said hospital, and if any of said income for any year remains, it shall be used in the general maintenance of said hospital. The bill, after setting forth the above facts, charged that said deceased was in his dotage and of unsound memory and mentally incapable of executing a will when said will was executed, and that Arthur Cook and other officers of

said bank, well knowing his mental condition, for the purpose of obtaining possession and management of his estate, fraudulently, designedly and artfully prejudiced said testator against his relatives and by false and fraudulent representations and undue influence induced him to sign said purported will, and that the same is not his will. Trial was had, and the jury found that the instrument probated is the last will and testament of said deceased, and the court entered a decree on the verdict against appellants.

Appellants first complain of the court's denial of their motion of Friday, November 6, 1914, to file an amended bill after the cause, by agreement of the parties on June 29, 1914, had been set for trial for November 9, 1914. The amended bill is precisely the same as the original bill, with the additional allegations that Wilber F. Spencer was not a credible witness to said will; that as a stockholder in said bank he will share in the earnings of said bank as such trustee and in the fees earned by the executor in executing said will, as Cook, when made cashier of said bank, and as a part of the terms of his employment, agreed that said bank should receive as its property all fees earned by him while serving as an administrator or executor; that Spencer was, when the will was witnessed by him, a physician and surgeon with a large and extensive practice in said townships of Munson and Geneseo and was a member of the medical staff of said hospital, and will be often called to treat the poor and needy patients in said hospital from said townships and be paid therefor out of said trust funds, and that for said reasons he is a beneficiary under said will and an incompetent witness to said will. If it be conceded that the amendment stated good and sufficient grounds for setting aside the will of the testator, still we do not think the court erred in denying the motion to file the amendment. A demurrer had been argued and sustained to the original bill and certain matters had been expunged therefrom in March, 1914, as scandalous and impertinent, on exceptions

filed by appellees. On April 28, 1914, the complainants amended their bill, and on June 23, 1914, the hospital trustees filed their answer. On June 29, 1914, by agreement of counsel the cause was set for trial on the first jury day of the next term, Monday, November 9, 1914. The suit was brought October 21, 1913, more than twelve months prior to the application to file the second amended bill. While the second amended bill was prepared and presented with the application to file it, yet no reasons were given to the court, by affidavit or otherwise, so far as the record shows, why the amendments were not offered at an earlier date, and there was only one more court day to intervene between the time of the application to amend and the day the cause was set for trial. Either party to a suit in chancery has the right to insist that the litigation be not unnecessarily prolonged. Unless there was some meritorious reason for further delay, appellees had the right to demand a trial or a dismissal of the bill. (*Campbell* v. *Powers,* 139 Ill. 128.) "Very special cause must usually be shown in order to amend after a cause is ready for hearing, and new matters cannot generally be introduced after the cause is set down for hearing." (16 Cyc. 343.) "Amendments which change the character of the bill so as to make substantially a new case should rarely, if ever, be made after the cause is set for hearing." (Fletcher's Eq. Pl. 417.) The allowance of amendments in chancery is largely within the discretion of the trial court, and the reviewing court should not reverse for a refusal to allow such an amendment unless there is shown manifest abuse of such discretion. (*Foss* v. *People's Gas Light Co.* 241 Ill. 238.) So far as this court may know, appellants may have known of all the new facts alleged in the bill, if they are facts, at the time the original bill was filed. The mere fact that formal replications were not filed by appellants does not change the rule. Their omission in that particular does not furnish an excuse for further omissions by them.

Appellants sought to raise the question of the competency of Spencer to witness the will by proving the said facts charged in the amendment to the bill, but the court sustained objections to the evidence offered for that purpose and that ruling is assigned as error. Our decision that the court did not err in denying the motion to file the amendment to the bill necessarily disposes of all questions as to the competency of Spencer to attest said will. Appellants, in making out their case, are confined to the allegations in their bill, and cannot rely upon any grounds for setting aside the will other than those stated in the bill. (*Swearingen* v. *Inman,* 198 Ill. 255.) For the same reason the court ruled properly in not allowing appellants to prove the same facts when the testimony of Spencer before the probate court was permitted to be read to the jury over appellants'. objection. The statute expressly provides that at the trial the certificate of the oath of the witnesses at the time of the first probate of the will, covering the points in section 2 of the Statute of Wills, shall be admitted as evidence, and this court has repeatedly held that that evidence, when introduced, makes a *prima facie* case for the proponent. (*Baker* v. *Baker,* 202 Ill. 595; *Waters* v. *Waters,* 222 id. 26.) The burden of proof then shifts to the complainant who seeks to impeach the validity of the will, but he can only impeach it upon the particular grounds alleged in his bill of complaint. (*Purdy* v. *Hall,* 134 Ill. 298; *Huffman* v. *Graves,* 245 id. 440.) As Spencer did not testify in person at the trial, the court properly ruled that appellants could not, under their bill of complaint, raise the question before the jury of his incompetency as a witness because of any direct gain that might come to him by the provisions of the will. Their further objection in this court that the cross-examination of the attesting witnesses and the rulings of the probate court thereon were read to the jury in connection with the direct examination of the witnesses cannot

be entertained, because no such objection was made in the trial court.

Appellants further urge that thirty-five non-expert witnesses for appellees were permitted by the court, over their objections, to testify that in their opinion the testator was of sound mind and memory at and before and after the time he executed his will, without stating any sufficient facts upon which to base any such opinion. This court is committed to the rule that before non-expert witnesses may give their opinions as to the soundness or unsoundness of the mind and memory of a testator the witnesses must state sufficient facts upon which to base such opinions, and that the trial court must determine whether such witnesses state sufficient facts upon which to predicate their opinions. (*Graham* v. *Deuterman,* 244 Ill. 124.) We have carefully examined all the testimony of said witnesses, and in our judgment the court properly ruled that all of them qualified to give such opinion with the possible exception of three or four of such witnesses. Those who so qualified had known the testator for years and were generally his close neighbors. They testified to business transactions with him in person, of various and different kinds, and many of them related extraordinary feats of memory on the part of the testator, showing that he was able to select from more than a hundred head of cattle he was pasturing for hire the cattle owned by each patron, and to settle with the owners of them correctly from memory for the pasture of the cattle without reference to his books, which were also found to be accurately kept by him. The testimony of these witnesses also shows that he was able to give to the assessor, from memory, correct lists of his property and its valuation, and to transact all of his business deals in person of buying and selling stock and to bank his money and check out the same. Such a person is mentally competent to execute a valid will. (*Schneider* v. *Manning,* 121 Ill. 376.) Those persons who witnessed and testified to such business

transactions qualified themselves to express their opinions on the soundness or unsoundness of the testator's mind and memory. About all of them testified that they noticed no difference in his mental ability from the first time they knew him to the last time they saw him, and that was competent evidence. (*Carnahan* v. *Hamilton,* 265 Ill. 508.) It was also proper to permit them to testify that he knew the market prices of stock, read the newspapers and was posted on current events of those times. It was not necessary for the witnesses to state in the first instance the exact conversations of both parties to said transactions. It was sufficient for the witnesses to relate the facts concerning such transactions and what the testator did in connection with them. On cross-examination it was the appellants' privilege, if they so desired, to elicit from the witnesses every detail, including the language of the testator, that might shed any light as to the testator's ability to understand and transact business intelligently.

Appellants further insist that they had a right to demand of appellees' counsel, and to have them compelled by the court, if necessary, to deliver up to them any written statements appellees' counsel had taken from their witnesses in preparation of the trial in this case and to use such statements as evidence for appellants, if they so desired. They therefore complain that the court erred in not permitting them to cross-examine appellees' witnesses with a view to ascertain if such written statements had been made by them. All such statements of witnesses made to counsel in preparation for trial, and all notes and briefs made by the attorneys for the same purpose, are the property of the attorneys themselves, and the court has no power or right to compel their surrender to opposite counsel to aid them in making out their case. The court properly ruled that such drag-net examinations were entirely improper.

Many other rulings of the court on the examination of witnesses for the appellees and for the appellants are urged

as error. We have carefully examined all of them and find that the court committed no substantial error against appellants in such rulings.

The evidence in this record sustains the verdict of the jury and the decree of the court, as the weight of the evidence clearly shows that the testator was of sound mind and memory and mentally competent to execute a valid will, and did execute the same freely and voluntarily, without being unduly influenced by anyone, on September 30, 1910. He was seventy-two years old on that date, was a bachelor and lived on his farm, and had conducted his own business affairs in person until he died, and did his own cooking a great deal of the time. By his economy and good management he had accumulated the property disposed of by his will. In his early manhood he had cultivated his farm and raised various farm products. In the later years of his life he ceased cultivating and renting his farm and had it all seeded for pasture, and depended upon the hire of his pastures, raising and selling stock and loaning money for his income. He many times expressed himself that it was more satisfactory to him to pasture his farm than to rent it for cultivation, as it was a great deal less trouble and bother to him and produced all the income in that way that he needed, and improved the soil instead of running it down to a low state of productiveness. We see wisdom in that conclusion rather than evidence of an unsound mind, and no doubt the jury viewed it in the same way. There is no evidence in this record that he ever made a business transaction in which he lost money or showed the lack of mental ability to protect himself. Only three business transactions are alluded to by appellants' witnesses with any apparent intention of questioning his ability or judgment in business matters. One was the buying of an automobile, another was making a loan of money at four and one-half per cent interest, and the third was his refusal to make a loan to one party on any terms, with the statement that he needed his

money and had to look after himself. There is also evidence that he hid or buried some money in tin cans in some dense weeds near his barn. There are no special facts or circumstances related in connection with any of those transactions which tend to show insanity. The bare statement of such facts, alone, can hardly be said to be evidence of insanity or want of business capacity. Fifty-seven witnesses, most of them prominent business men, as admitted by appellants, neighbors of the testator who had known him intimately for years and had had business dealings with him and had visited him frequently, testified that he was of sound mind and memory and mentally competent to transact ordinary business, and related the various business transactions with him upon which they based their opinions, as has already been stated as to thirty-five of them. None of them were disqualified to testify by reason of their living and being tax-payers in said townships of Munson and Geneseo. (*Hawes* v. *Humphrey*, 9 Pick. 350; 20 Am. Dec. 481.) Forty-one witnesses testified for appellants. Some of them had not seen or spoken to the testator for nine years or more prior to the execution of his will. About twenty of those witnesses testified that he was not of sound mind, in their opinion. The others expressed no opinion on that subject. Four who expressed such opinions gave no facts whatever upon which they could be legally predicated. The other witnesses for the appellants who did express such opinions based them generally upon some action or statement made by the testator that they thought strange or peculiar. Only a very few of them testified that he was incapable of transacting ordinary business. Many of the witnesses based their opinions on incidents or actions of the most trivial character, thereby rendering their opinions almost worthless. The evidence shows, without question, that the testator was injured in a runaway in 1899, in which he was thrown out of his wagon against a tree and almost killed. As a result of that injury one of his eyes was

moved or turned in its socket so that the sight was turned down and in, towards the nose. His head was bent forward and down, and his neck so stiffened that from that time he could never carry his head up and in a natural position. He had double vision and would see two objects where there was but one, by reason of losing the proper focus of his sight. For this reason he nearly always kept his hand over his injured eye and moved back and forth when talking to anyone and presented a very peculiar and changed appearance. He was also a man of high temper and occasionally would become very much enraged. He had an aversion for children and they seemed to annoy him very greatly, and he did not like to be in the society of women very much. Most all of the strange or peculiar actions testified to by appellants' witnesses can be accounted for as results of his injury in the runaway, or his temperament, and his dislike of women and children and his extraordinary fondness of his stock. The evidence is too voluminous to relate in detail. We can conceive of no stronger evidence of the soundness of a man's mind and memory than clear and convincing proof that he has the ability to intelligently, accurately and profitably conduct his own business affairs and that he actually did so all his life, as the proof shows the testator did in this case. Without proof of undue influence or insane delusions such evidence must convince any reasonable and unprejudiced mind of the competency of the testator to execute a valid will.

Appellees' instructions numbered 1, 2 and 3 are not subject to any of the objections or criticisms made thereto by appellants. They correctly state what constitutes a *prima facie* case for proponents, and that after proof of such case the burden of proof shifts to contestants to prove their defense by a preponderance of the evidence. The real burden thus cast on appellants was not only to overcome the *prima facie* case of proponents, but also the added legal presumption in favor of sanity, by a preponderance of the evidence

on the whole case. *Egbers* v. *Egbers,* 177 Ill. 82; *Brainard* v. *Brainard,* 259 id. 613.

Appellees' instruction No. 5 is admitted to state a correct proposition of law ordinarily, but appellants argue that it, and instructions 6 and 7 following it, were prejudicial to their case because they completely ignore the fact that there was proof in the record that the testator was afflicted with a morbid or insane delusion as to the natural objects of his bounty. The only evidence in this record upon which to predicate such a claim is that of Mrs. Coverdale and Mr. Rockwell concerning one single incident that transpired in 1899, about four days after he was so seriously injured in a runaway and eleven years before he made his will. Their evidence was, in substance, that John Walker went to his physician and got some medicine for him in capsules and brought them to him; that testator said to Mrs. Coverdale, "See there what they have brought me; I'll never take it; they have put the doctor up to poison me; look at these glass bottles they have brought me to take." An insane delusion is a false belief for which there is no reasonable foundation, and which would be incredible, under the given circumstances, to the same person if of sound mind, and concerning which the mind of the decedent was not open to permanent correction through evidence or argument. (*Appeal of Kimberly,* 68 Conn. 428; 37 L. R. A. 261.) The evidence does not show that the decedent adhered to his delusion. It does disclose that he afterwards visited with his relatives in his county and ate meals with them. The evidence is therefore far from showing, or tending to show, that he was laboring under any such a delusion at the time he executed the will. A finding by the jury that he was so afflicted at the time he executed his will could not be sustained under the evidence, and the court would have been warranted in refusing any and all instructions offered on that question. Instruction No. 6 is correct under the holding of this court. *Austin* v. *Austin,* 260 Ill. 299.

Appellants were not prejudiced by appellees' given instructions numbered 9 and 10 and they are applicable to the case. It is several times stated by appellants that they relied on the presumption of undue influence which arises from the fact that the will was drawn by a fiduciary agent of the testator, Arthur Cook, who profited largely by it, was executor of the will and a stockholder in said bank. There is no evidence in the record that Cook was a stockholder in the bank or a fiduciary agent of the testator, and there is no testimony of any witness proving, or tending to prove, undue influence on testator by Cook or any other person. They have insisted in this court and in the court below that Cook's fees as executor would be the property of said bank, and averred it in the amended bill. Therefore no case of undue influence was made by appellants. Appellants' contention that the said instructions ignored the presumption arising from facts showing undue influence is therefore groundless.

It is also clearly apparent by mere inspection that appellants' objections to appellees' given instruction No. 11 are entirely groundless, as it does not purport to give any rule for determining the credibility of the witnesses. They must have had in mind some other instruction.

Appellants argue exceptions to the rulings of the court in refusing to give to the jury their instructions numbered 1, 2, 3, 4, 6, 8, 9, 10, 11, 12, 18, 19 and 20. The court committed no error in refusing said instructions. The same principles announced in some of the said refused instructions are found in other instructions given either for appellants or appellees. Some of them were not based on any evidence at all to be found in the record. One of them does not state the law correctly. It is the duty of the court, and not the province of the jury, to determine whether or not a non-expert witness has qualified himself to state his opinion upon the soundness of the mind and memory of the testator to execute a will.

For the reasons already indicated it was not error for the court to modify appellants' first and tenth given instructions. There was no special reason shown in this case why the court should instruct the jury that "testamentary capacity does not necessarily require that a person should be technically insane." The duty of the court was rather to inform the jury, by its instructions, what would constitute testamentary capacity and incapacity, rather than to undertake to tell them what would not constitute the one or the other. It is a true proposition that testamentary capacity or incapacity does not necessarily require that the person should be free from typhoid fever, but only under very special circumstances would it be of assistance to a jury in determining the question of the sanity or insanity of the person to so instruct them.

The court did err, however, in refusing to give appellants' instruction offered while appellees' counsel was making the closing argument to the jury and for the purpose of correcting any erroneous impression the jury might have gotten from said counsel's statement to the jury that "not one single witness for the contestants had testified that even in their opinion William Walker did not have sufficient mental capacity to make a will." That conclusion was one to be reached by the jury, and no witness could have been legally permitted to make that statement to the jury. The instruction was properly drawn, and the court's rule that all instructions should be passed up for consideration before the final argument was begun cannot reasonably furnish any excuse for refusing the instruction, as no occasion for offering it had arisen until the final argument was begun. We do not regard the refusal of the instruction, however, as reversible error. The court gave thirteen instructions for appellees and seventeen for appellants, and the jury were fully instructed upon every other proposition of law applicable to the case, and the court might have properly

refused certain other of appellants' instructions that were given to the jury.

The evidence overwhelmingly preponderates in favor of appellees, and we do not see how an intelligent jury could have rendered a verdict, on the evidence, in favor of the appellants.

The decree of the circuit court must therefore be affirmed.                                        *Decree affirmed.*

Mr. JUSTICE COOKE, dissenting.