**Anders Forslund, Appellee, v. Chicago Transit Authority, Appellant.**

**Gen. No. 46,668.**

First District, Second Division.
February 21, 1956.
Released for publication April 3, 1956.

291

Thomas C. Strachan, Jr., Arthur J. Donovan, and Paul Denvir, all of Chicago, for defendant-appellant.

Arthur S. Gomberg, and Joe Reiff, both of Chicago, for appellee; Samuel Nineberg, of Chicago, of counsel.

PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

Judgment for $5,500 in favor of the plaintiff based upon a jury's verdict was entered in the Circuit Court of Cook County. The suit was brought to recover damages sustained by plaintiff while boarding a streetcar owned and operated by the defendant. From this judgment the defendant appeals on the theory that it was not guilty of any negligence and that the sole and proximate cause of plaintiff's injuries was his negligence in attempting to board a moving streetcar.

The evidence on behalf of the plaintiff was to the effect that at the intersection of Madison street and Cicero avenue, in Chicago, Illinois, he attempted to board a northbound Cicero avenue streetcar; that the streetcar ordinarily stopped with the rear end 50 feet south of the south curb line of Madison street and that on the day of the accident, because automobiles were standing at the intersection, the streetcar had stopped 20 feet south of its ordinary stopping place; that a number of people at the time were attempting to board the car, the last of whom was the plaintiff; that he had placed one foot on the top of the platform and the other on the step, holding the handle with his right hand, when the streetcar started, throwing him so that his left shoulder hit the pavement; that at the time he fell from the car he was about 60 or 75 feet south of the stop and go signal; that the car had moved about 5 feet from the time it started, and had stopped with the front of the car south of Madison street.

The evidence on the part of the defendant indicates that the streetcar had stopped at its usual stopping place with the front end at the building line of Madison street; that the streetcar was 50 feet long; that it had started and had moved some distance when the plaintiff attempted to board the moving streetcar and fell and was injured; that the streetcar stopped in the intersection.

293

The first contention urged by the defendant is that the verdict is against the manifest weight of the evidence.

When the case was submitted to the jury the defendant offered a special interrogatory, which was submitted by the trial court to the jury together with the forms for a general verdict. The interrogatory was: "Did the plaintiff board the streetcar at the time and place in question while it was in motion?" The jury at the time it returned a general verdict in favor of the plaintiff finding his damages at $5,500, answered the interrogatory "no." In the motion for new trial the defendant alleges that "the verdict is contrary to and against the manifest weight of the evidence." No reference is made to the special interrogatory. The question before the jury in the trial court was whether or not the defendant through its negligence in starting the car at the time when the plaintiff was attempting to board it caused the alleged damage. The theory of the defendant was that the plaintiff was injured because he attempted to board a moving car. Consequently if the jury found that at the time of the accident plaintiff was not attempting to board a moving car, on the evidence in the record they could render no other verdict than the one which they returned. The answer to the special interrogatory is consistent with the general verdict and substantially conclusive of the issues in the case. In Voigt v. Anglo-American Provision Co., 104 Ill. App. 423, the Appellate Court held that the assigned error in the motion for new trial that the verdict was against the manifest weight of the evidence applied only to the general verdict and did not include an objection to the special findings, and that, in the Appellate Court, under such circumstances the special findings must be considered to stand as fully sustained by the evidence. The Supreme

Court affirmed the Appellate Court (Voigt v. Anglo-American Provision Co., 202 Ill. 462), saying:

"It is, of course, the bounden duty of the Appellate Courts to consider questions of fact properly presented and to correct errors of fact committed by the trial courts. . . . Where, however, it is alleged that the trial court erred in overruling the motion for a new trial, based on the ground that the verdict was against the weight of the evidence, the Appellate Court is the only tribunal that can correct the error, if any has been committed, and the aggrieved party has the undoubted right to have the decision of that court on the question. . . . But in the case at bar we do not understand, even from the language of the opinion filed, that the Appellate Court regarded the decision below as conclusive of the facts, but only that the objection that the verdict was against the weight of the evidence applied only to the general verdict, and not to the answers of the jury to the special interrogatories submitted to be answered, as this court has already held, (Avery v. Moore, 133 Ill. 74; Pennsylvania Coal Co v. Kelly, 156 Ill. 9; Empire Machinery Co. v. Brady, 164 Ill. 58;) and that the special findings, not having been mentioned as a ground for a new trial, could not be assigned as error in the Appellate Court, and that, such findings being unquestioned and substantially conclusive of the facts upon which the question of liability depended, the judgment could not, on the alleged error, be reversed."

See also Weinrob v. Heintz, 346 Ill. App. 30; Brant v. Chicago & Alton R. Co., 294 Ill. 606; Brimie v. Belden Mfg. Co., 287 Ill. 11. Under these holdings, since no objection in the instant case was made to the special findings in the motion for new trial, the question as to whether or not the verdict of the jury was against the manifest weight of the evidence is not before us.

The defendant makes certain procedural objections which we will consider.

In the trial it was admitted that the plaintiff fell to the ground from a streetcar and was injured. The only disputed question of fact was as to whether he was injured while attempting to board a moving car or while boarding a standing car which started up before he had a chance to reach the platform. There was conflict in the testimony as to where the streetcar stopped.

██ The defendant complains that the plaintiff attempted to impeach, on immaterial matters, witnesses proffered by it. One Lyons, a witness proffered by the defendant, testified on direct examination that the streetcar had stopped at Madison street and that he knew approximately where the streetcar had stopped; that the streetcar had moved about 60 feet before the time when the witness, who was on the rear platform of the streetcar, first saw the plaintiff, at which time he was attempting to board the streetcar at a running gait; that the streetcar stopped in the intersection with its rear about 10 to 15 feet past the south curb of Madison street. On cross-examination plaintiff's counsel asked the witness as to whether there was an alley running east and west south of Madison street, to which the witness answered that he was not sure. Counsel then asked the witness as to whether on a previous trial of the case he had stated that the streetcar was stopped alongside a building which probably went back to the alley and that the distance from the alley to the corner was 100 or 125 feet, to all of which questions the defendant objected on the ground that they were not contradictory of the witness's instant testimony. The witness stated that he had made those answers. He then testified that when he saw the plaintiff, the latter was running. The plaintiff's counsel asked him as to whether on the previous trial of the case he was asked the question "Could you tell whether he was walking or running?" and if he

answered it "No, I couldn't say that." To this question there was no objection, and the witness, after looking at a picture, stated that he recalled that there was an alley there, that the rear end of the streetcar, when it was first stopped, was about halfway from the corner to the alley, and that the rear end was about 50 to 55 feet south of the corner or about halfway from the alley to the corner. Counsel strenuously contends that the attempted impeachment was improper because the witness had stated that he was not absolutely sure there was an alley there, and that any attempted impeachment on the question as to whether an alley was there or not was on an immaterial matter. However, the matter involved was the position of the car at the time it stopped. The witness had testified on his direct examination that the streetcar, before the plaintiff attempted to board it, had proceeded about 60 feet and at the time when the streetcar had stopped after the accident its rear end was 10 to 15 feet south of the south curb of Madison street, which would have placed the rear end of the streetcar, at the time when it first stopped, 70 to 75 feet south of the south curb of Madison street. The evidence given by the witness at the first trial was that at the time when the streetcar first stopped the rear end was about halfway from the alley to the corner and that the distance from the alley to the corner was about 100 to 125 feet, which would place the rear end of the streetcar 50 to 60 feet south of the corner, and at the conclusion of his cross-examination the witness stated that when the streetcar first came to a stop the rear end was 50 to 55 feet south of the corner. The questions asked the witness with reference to his previous testimony were proper and were not on an immaterial matter, and in any case were not harmful to the defendant as the final testimony of the witness was in favor of the defendant's position that the front of the streetcar when it had stopped was at the south curb line of Madison street.

297

 On plaintiff's cross-examination of Ryan, the conductor of the streetcar and a witness for the defendant, the following occurred, after the witness had stated "When I first saw him (plaintiff), maybe he had run two or three feet":

"Mr. Reiff (counsel for plaintiff): Q. What?

"A. Two or three feet when I first saw him.

"Q. The street car moved two or three feet?

"A. Yes, sir."

The witness, in response to a question, then said that at the previous trial the following question was asked of him and that he gave the following answer:

"Q. What happened then?

"A. Well, the streetcar started up and went about thirty or forty feet and I seen a man running from the store on the corner, running out to the street."

Plaintiff's counsel then attempted by various questions to get the witness to state as to whether the streetcar had moved two feet or forty feet, to all of which questions the defendant's objections were sustained. The witness on further cross-examination stated that at the time of the accident the plaintiff had run 38 feet from the tavern before he attempted to board the streetcar and that the streetcar had traveled 40 to 50 feet before the accident occurred. The witness, in answer to plaintiff's question, stated that at the previous trial the following question was asked and the following answer given:

"Q. Now, from the time he started to run the forty feet, up until he boarded the car, how far did the streetcar travel?

"A. Approximately five or six feet. That is about all, because he was running as the car was moving. It wasn't going too fast. It didn't take him too long to get out there."

298

The witness then testified that from the time he first saw the man up to the time of the accident the street-car had moved 40 to 50 feet. The questions asked for the purpose of impeachment were proper and the witness admitted that the answers he had given on the previous trial were inconsistent with his present testimony. This was a proper matter for the consideration of the jury and was with reference to matter material to the issues before them.

Subsequently on redirect examination of the witness Lyons, counsel for defendant asked the following question: "What is your present recollection, as you sit there now, as to when you first saw this man attempting to board the car while it was in motion as to whether he was running or walking?" This question was objected to as improper redirect examination. In discussion in chambers with the court, counsel for the defendant insisted that since the witness had been questioned as to whether or not the plaintiff was running or walking and had been asked concerning his testimony at the previous trial, he then was entitled to have the witness reaffirm the testimony which he had given on direct examination. The court sustained the objection.

■■ The defendant here contends that the court's ruling was improper in that the testimony of the witness having been impeached by showing that he had made an inconsistent statement in the previous trial of the case as to whether the plaintiff was running or walking, defendant was entitled to have him clarify his statement. There is no question that where a witness admits declarations or statements imputed to him the witness should have an opportunity to give such reason or explanation in exculpation of his conduct as he might have, and to show the circumstances under which the contradictory statement was made. Atchison, T. & S. F. R. Co. v. Feehan, 149 Ill. 202; Cal Hirsch

& Sons Iron Co. v. Coleman, 227 Ill. 149; Walther v. Chicago & Alton R. Co., 188 Ill. App. 221. The proper way to rehabilitate a witness is to permit him to state any facts which will explain or reconcile the utterances or to show the meaning and relationship of each. It is not proper to ask a witness to repeat the statements he made on direct examination. Marquette Cement Mfg. Co. v. Williams, 132 Ill. App. 629.

█ The defendant also contends that the court erred in giving the following instruction:

"If you believe from the evidence that any witness in this case has knowingly and wilfully sworn falsely on this trial to any matter material to the issues in this case, as elsewhere defined in these instructions, then you are at liberty to disregard the entire testimony of such witness, except in so far as it has been corroborated—if you find it has been corroborated—by other credible evidence or by facts and circumstances proved on the trial."

This instruction has frequently been before our courts and has been condemned in a number of cases. In Schneiderman v. Interstate Transit Lines, Inc., 401 Ill. 172, the Supreme Court again considered the instruction, and held that other instructions given in the case placed before the jury every issue and every fact material to the issues necessary to a recovery by the plaintiff or a finding in favor of the defendant. Substantially the same instructions considered sufficient by the court in that case were given in the case before us. The Supreme Court there stated:

"We are not receding from our position that the matters material to a lawsuit should be made known to a jury before such instructions are given, but we should also remember that jurors are presumed to have some intelligence, and we cannot go outside of the record to speculate upon what issues they might have had in mind when all of the issues considered by coun-

sel on both sides of the case were presented to the jury and it was given an opportunity to measure the materiality of the issues, or what facts are material to the issues, by what is pointed out in other instructions in the case."

The giving of the instruction here, considering the record, did not constitute reversible error. However, it might be an interesting matter for investigation, which would be psychological in its nature bordering on the pathological, as to what irresistible impulse seems to move trial counsel to insist on proffering this instruction in the light of the Supreme Court's opinions. Scarcely a case is tried in which counsel for one side or the other does not offer this instruction. Professor Wigmore, referring to the maxim *falsus in uno, falsus in omnibus,* has said (Evidence, 2d Ed., vol. 2, p. 449):

"It may be said, once for all, that the maxim is in itself worthless, first, in point of validity, because in one form it merely contains in loose fashion a kernel of truth which no one needs to be told, and in the others it is absolutely false as a maxim of life; and secondly, in point of utility, because it merely tells the jury what they may do in any event, not what they must do or must not do, and therefore it is a superfluous form of words. It is also in practice pernicious, first, because there is frequently a misunderstanding of its proper force, and secondly, because it has become in the hands of many counsel a mere instrument for obtaining new trials upon points wholly unimportant in themselves."

██ The defendant also complains that the court failed to give two instructions, mandatory in form, which it offered, one of which concluded that under certain conditions the jury should find the defendant not guilty, the other that the plaintiff could not recover. Three peremptory instructions were given on behalf

301

of defendant. The practice of giving an undue number of peremptory instructions containing the phrase "you should find the defendant not guilty" or its equivalent has been repeatedly condemned by our courts. In Stone v. Warehouse Cartage Co., 6 Ill.App.2d 229, we said:

"The giving of an inordinate number of instructions peremptory in form and containing the phrase 'you should find the defendant not guilty,' or its equivalent, has been repeatedly condemned by our courts, and it has been said that in a close case excessive repetition of such a phrase is reversible error. Loucks v. Pierce, 341 Ill. App. 253; Alexander v. Sullivan, 334 Ill. App. 42; Baker v. Thompson, 337 Ill. App. 327."

The subject matter of the refused instructions was fully covered by the instructions given on behalf of the defendant. In Baker v. Thompson, 337 Ill. App. 327, the court said:

"Too often defense attorneys are prone to tender an excessive number of instructions, repeating the same proposition over and over, not with the honest design of informing the jury of the law, but with the thought of enforcing upon the minds of the jury the importance of their various defenses."

See also Moore v. Daydif, 7 Ill.App.2d 534. The trial court's ruling on the instructions was proper.

█ The defendant also complains that counsel for the plaintiff, when cross-examining a defendant's witness, one Holmes, upon ascertaining that he had given a statement to the streetcar company, in the presence of the jury demanded that defendant give him this statement. The court thereupon had a conference with counsel in his chambers and the court ruled that the plaintiff had no right to the statement. After the conference the court instructed the jury to disregard anything that had been said about this matter by coun-

sel. The plaintiff's counsel then asked the witness as to whether the statement which he gave the defendant was a written statement, and on objection there was a further conference in chambers. After this plaintiff's counsel asked the witness as to whether or not he had at any time given a statement to anyone that the man had been drinking, and at that time counsel for the defendant suggested that the question should also indicate as to whether the statement was either oral or written. The suggestion of counsel for defendant was incorporated in the question and the witness answered that it was a written signed statement. Subsequently on redirect examination by the defendant the witness stated that when he was interviewed in counsel's office he had made reference to the statement. In support of its contention the defendant cites and quotes from Reinmueller v. Chicago Motor Coach Co., 341 Ill. App. 178, in which case this court affirmed the judgment of the trial court. It was not indicated that the quotation given by defendant as authority was from the dissenting opinion and was not in accord with the decision of the court. The defendant should have called this to our attention. The statement of the witness in the defendant's file could not be used by it as evidence, and it could only be used by the plaintiff for impeachment under certain conditions. The authorities are not in accord as to whether a report on an accident made by an employee to his employer, and by the latter transmitted to his counsel for use in litigation, is a privileged communication. 146 A. L. R. pp. 976 et seq. Professor McCormick in his work on Evidence, sec. 100, p. 204 says:

". . . It is usually held that an agent's report to his principal though confidential is not privileged as such, and looked on as a mere pre-existing document it would not become privileged when sent by the client-principal to his lawyer for his information when suit

303

is brought or threatened. The problem frequently arises in connection with proceedings for discovery of accident-reports by employees, with lists of eye-witnesses, and in connection with signed statements of witnesses attached to such reports or secured separately by investigators employed in the client's claim department or by an insurance company with whom the client carries insurance against liability.

"Since a statement made by the client's agent, on behalf of the client to the latter's attorney would be privileged, it is an easy step to treat in the same way a report secured by the client from his employee for the purpose of submitting it to counsel in connection with an actual or anticipated claim or suit. Most of the decisions treat such special reports as privileged from discovery under the privilege for attorney-client communications. On the other hand, routine reports of employees made in the regular course of business, before suit is brought or threatened, have usually, though not always, been treated as pre-existing documents which not being privileged in the client's hands do not become so when delivered into the possession of his attorney."

In Walker v. Struthers, 273 Ill. 387, the court held that a party had no right to demand of opposing counsel written statements taken from the latter's witnesses in preparation of the trial. The rules of the Supreme Court in force at the time when the instant case was tried provided that a party was not required to list as a part of the sworn list of documents material in the cause any "memoranda, reports or documents prepared by or for either party in preparation for trial, or to any communication between any party or his agent and the attorney for such party" (Rule 17 [Ill. Rev. Stats. 1953, ch. 110, § 259.17]). In the rules of the Supreme Court in force January 1, 1956 it is provided that such memoranda, etc. shall not be required

to be disclosed through any discovery procedure, and that they are privileged (Rule 19—5 [Ill. Rev. Stats. 1955, ch. 110, § 101.19—5]). See Chapman v. Gulf, M. & O. R. Co., 337 Ill. App. 611, and Eizerman v. Behn, 9 Ill.App.2d 263, opinion filed this day. Plaintiff's demand for the statement was improper.

 The defendant argues that the demand for the statement was made by the plaintiff knowing that he was not entitled to see it and solely for the purpose of prejudicing the defendant before the jury. The only way the defendant could be prejudiced would be if the jury believed that the statement, the contents of which they were prevented from knowing by the defendant through his objection, was detrimental to defendant's contentions in the case before them. However, in this case the contents of the statement were brought out by the defendant on his redirect examination and were fully before the jury, and any error which defendant might have urged was thereby cured. Porter v. Terminal R. Ass'n of St. Louis, 327 Ill. App. 645. The court was not in error in denying defendant's motion for a mistrial.

██ ██ The defendant also complains that the plaintiff in his closing argument to the jury improperly accused one of defendant's witnesses of committing perjury, referring to the two versions given by him in the two trials of the case. Defendant again cites and quotes from Reinmueller v. Chicago Motor Coach Co., supra, as authoritative without calling attention to the fact that the quotation is from the dissenting opinion. We are in accord with the majority opinion in that case, where the court says:

"Several of the statements denounced are inferences which plaintiff's counsel was entitled to deduce from the evidence. Wide latitude should be allowed in this regard. If the rule with reference to improper inferences were applied as strictly as counsel for defendants

urge, it would have a tendency to deprive litigants of the right of having their cases argued, for the prudent attorney would in such case forego argument rather than risk reversible error. In Commonwealth Elec. Co. v. Rose, 214 Ill. 545, the court said at page 561:

" 'Counsel may arraign the conduct of the parties, and impugn, excuse, justify, or condemn motives, so far as they are developed in evidence, or assail the credibility of witnesses when it is impeached by direct evidence, or by inconsistency, or incoherency of their testimony, their manner of testifying, their appearance upon the stand, or by circumstances. "He may argue such conclusions from the testimony as he pleases, provided he does not misquote witnesses." . . . It has been said: "Just and fierce invective, when based upon the facts in evidence and all legitimate inferences therefrom, is not discountenanced by the courts." . . .' "

The judgment of the Circuit Court is affirmed.

Affirmed.

ROBSON and SCHWARTZ, JJ., concur.